Good morning, Your Honours. Patrick Salisbury, Counsel for the Appellant Jean-Francois Hennin. This matter relates to the 1991 rehabilitation of Executive Life. Executive Life was insolvent. It was taken over by the Insurance Commissioner in 1991. An auction was held. A French group comprised of a company called Altus Finance and the Moff Group took over the insurance company. They were the winning bidders at the auction. Mr. Hennin was the CEO of Altus Finance. Sierra was the losing bidder at the auction. Sierra never operated as an entity. It was formed just for the auction. It was liquidated thereafter. The sale to the French group was deemed a resounding success. The policies were honoured. Everybody did fine. Years later, in a classic case of seller's remorse, the Insurance Commissioner sued Altus, Moff and many other entities, claiming that it had been deceived when it sold the insurance company to the French group and that there was a hidden ownership of the insurance company in Altus, which was controlled indirectly by the French government. And they won a judgment against Monsieur Aina, right? That's correct. And so really, as the case now reaches us, notwithstanding all the interesting facts a long time ago, it seems to me that the issue before us is a pretty narrow issue, which is under Rule 60A, whether the court exceeded its authority or not in revising, I'll try to use a neutral word, amending the judgment in the particulars that it did. Yes, I think that's precisely the question you're asking. What, in your view, are the limitations of what a court is authorized to do under Rule 60A? And in what specific respect do you think it exceeded that authority? Under Rule 60A, the court is allowed to correct a clerical error or omission. That's, as this Court has explained in Blanton, a blunder in execution. It's not correcting a mistake of law or adding something that it forgot to have placed in the first time. But what really happened here was the amended judgment doesn't change the judgment in any way in terms of the bottom line, right? No. Nothing, nothing. I know. All it does is, I'm sorry? I completely disagree with that, Your Honor. Oh, really? Why? Because the amended judgment does a number of things, but one of the critical things that it does is states for the first time that the judgment is not subject to set off for the other settlements with the various defendants. But that was always the intention of the court. That's the touchstone, it seems to me, under the cases is whether, I mean, the liability section of these two judgments is essentially the same. And really what seems to have changed is the fullness of the explanation to satisfy some concerns of the French court. But the liability portion, and as Judge Berzon says, the bottom line really aren't the same. I don't understand what's different. No, I don't think the bottom line are the same. There were four prior decisions by the district court saying that set off did apply under Section 877. When the court entered the original default judgment, there's no reference to set off not applying. You can't read into the judgment that the court somehow thought set off wouldn't apply but after the court had ruled four times that it did apply. Had your client ever raised the question? The client didn't raise any issue at that time because there were four prior orders saying set off apply. There was no reason to raise the question. The first time, the very first time the court said set off didn't apply was in the revised default judgments in 2010. Let me finish what I was going to say and then we'll go back to this, all right? Okay. Assuming for the moment that the set off was implicit all along and that the bottom lines weren't changed, what was changed, as Judge Graber said, was the explanation. First of all, judgments usually don't have an explanation. Our judgments in federal court usually are just judgment for the plaintiff and so much money, right? Yes. So in a way, what changed, this wasn't even an amendment to the judgment. It was essentially an opinion explaining the judgment. Well, if that was the case, then Rule 68 could have been used. But in fact, what the court did was add new rationale that could not have existed at the time because the facts didn't exist at the time. Oh, that's true only with respect to a couple of small pieces of it and if you excise those, everything else is the same. It's the Alford plea and there's one other item that were different afterwards, but 99% of this was the same. No, the Alford plea, of course, relates to events that occurred after the judgment. Right. But that's not what I'm primarily talking about. The new things that the court added in the revised judgment are a new theory of liability, separate tortious conduct on behalf of Mr. Anah, that was never in the complaint, that was never pled, that was never argued in connection with the default judgment and was never mentioned by the court in the original. The judgment was always with respect to him. It was never joined in several. I know there's a lot of argument to that effect, but it's always been individual to Mr. Anah. The judgment was individual as to Mr. Anah. The complaint alleged joint and several liability. And for purposes of 877, what's in the complaint is what counts and that's what this court told us in Vesey. You don't look at what happens after the settlement. You look at what the allegations were at the time of the settlement. Thus, if there's an exoneration of one defendant or liability of another defendant later, that's irrelevant to the Section 877 settlement. But the settlement, in fact, specifically excluded your client. No, the later settlement specifically included, and that's the Moff settlement post-judgment, specifically excluded Anah. But that's on the release. It's irrelevant to the exclusion on the release because Section 877 states that if you're liable or accused of being liable for the same injury, for a single injury, then you're automatically entitled to a Section 877 reduction, irrespective of what the release might say or the intent of the parties might be. But the damages here against Hinnon were not – were different damages because they were essentially disgorgement of unjust enrichment, right? So nobody else could have been liable for that because he's the one who had it. Well, there's two judgments here. With respect to the Commissioner's judgment, there was a disgorgement order, unjust enrichment, restitution. With respect to Sierra, there was never even a claim for disgorgement. There was nothing to disgore. Well, that's something I need clarification on. There were two $10 million judgments. Correct. Are they now trying to enforce two $10 million judgments or one $10 million judgment? Two $10 million judgments. They're trying to enforce both of them, even though they're entirely different rationales for both. And down to the dollar, the same judgment's awarded. So what the judge did in the second default judgment, the revised default judgment, was added a new rationale. And the new rationale in the Sierra judgment, where there was no claim for restitution, and hence he can't give a disgorgement remedy, the new rationale added in the revised default judgment is, well, this was apportioning the cost that Sierra was able to recover. But, and this is a critical fact, those costs weren't quantified at the time of the original default judgment. The court could not have been apportioning those costs. It could not have been his intention at the time because the facts didn't exist at the time. By defaulting, didn't your client simply lose the opportunity to complain about what was or was not in the original default judgments? That's the whole point of the default judgments. So those are a given. The only real question is whether the second set were permissible. There's no opportunity to complain about the first set of judgments. They are what they are. So the only real issue is, is there something wrong with the court's explanation that resulted in these amended or corrected judgments? And I'm particularly interested in an answer to Judge Berzon's original question, which is why shouldn't this be construed, even without the rule, as simply an opinion explaining how the court got to where it got for the benefit of the French court? That was the underlying rationale for what the court said it was doing. But it's not what the court did because the court relied on post-judgment evidence, including trial evidence, including the plea agreement and so forth. All of that was new. It couldn't possibly have been a part of the record originally. What was the amount of the damages, greater, lesser, or the same the second time? The stated amount is the same. But for the first time, the court says there's no set-off. And that makes the net amount totally different. Well, okay, you have to agree with that premise. But otherwise, the actual dollar number is the same, right? Yes, that's correct. Otherwise, the dollar amount is the same. But the rationale is not the same. And adding the rationale, which couldn't have existed at the time, exceeds the court's authority. Under 68, the court can only... Tell me, again, why it couldn't have existed at the time. Well, in several respects. First, with respect to the Sierra judgment, the Sierra judgment enters exactly the same amount as the Commissioner's judgment. But there's no claim for restitution in the Sierra case. So the court had to... So are you contesting only the Sierra judgment? No. On this particular issue, it only relates to the Sierra judgment, which is the new rationale added later for the allocation, the supposed allocation of damages in the Sierra judgment. But isn't that exactly the right procedure when one of the defendants defaults and there are other defendants as to whom there is no default but there's to be a trial? Why isn't it the right thing to do to allow the completion of the trial against the non-defaulting defendants before determining the amount of damages? I mean, it seems like you would have more to complain about had the court blinded itself to what the proof was later on. Do you understand my question? The default judgment generally shouldn't be entered in the case of multiple defendants until the trial against the other defendants is concluded, and whatever comes out of that comes out of that. In this case, the default judgment was entered earlier. But not the fixing of the damages. Well, the damages didn't arise out of the trial. The damages arose out of a later submission by Sierra of its costs. In the next year, they gave a cost assessment. At the time that the judge entered the amount of the damages in the Sierra case, which it now says it was allocating from Sierra's costs, Sierra had not quantified its costs. So it couldn't have been allocating those costs. Those facts didn't exist at the time. The cost could have been a dollar. The cost could have been $100 million. There was no way to say that the allocation of costs was $10.8 million down to the dollar the same as the commissioner. That's an after-the-fact justification for awarding Sierra what was clearly restitution damages. That's backfilling by Sierra. Well, it's a default judgment. Whatever it was to begin with, you're stuck with. So the only question is whether the court is allowed to explain itself again because you can't go behind the original default, whatever the theory might have been. Well, we can't go behind the original $10 million award because that's what was awarded. But to the extent the court has added a new theory, which wasn't true at the time, we can attack that theory on appeal. And without that theory, this judgment will not be enforceable in France. The French court has already said that. So if it comes with just the number, which is what came in the original default judgment, the court in France said unenforceable. It's only when they attach the number to a theory that the French court says, ah, now that's enforceable. Well, that's only part of their problem. They were interested in the individual liability question, which has always been the same. Notwithstanding your arguments, I just don't understand how you can make the argument that that's different. I don't see a difference. The individual liability has not been the same. When you default, you default to what's in the complaint. You don't default to anything that's not in the complaint. There are no allegations in the complaint to separate tortious comment. Well, the judgment, though, is a separate judgment against him individually. There's nothing joint about it, ever. The original judgments also are individual judgments. It's not a separate judgment on his liability. It's a separate judgment as to amount. But the allegations in the complaint remain the same, that they were a part of a civil conspiracy, that they acted together to deceive the insurance commissioner, and that there were losses resulting from that. Can you just clarify one thing for me? You said that you were contesting both the revised judgment against the commissioner and the revised judgment against Sierra, but you've only been arguing about Sierra. What was wrong with your revised judgment against the commissioner? Adding new factual findings that didn't exist at the time. But that didn't matter. It matters in France. It matters to the enforceability of this judgment abroad. So adding additional facts that arose after the time of the default judgment is not allowed under Rule 60A, and you can't do that just to make it enforceable in France. Why not? What limitation in 60A says that you can't explain if your intent remains the same and the bottom line of the judgment remains the same, and the only thing that you're adding is an explanation, either because you woke up this morning and said, I really want to explain myself, or because a court in another country asks for that explanation. What case or what prevents a court from doing that under Rule 60A? Rule 60A says you can explain what was your intention at the time based upon record evidence at the time. More than that, why do you need Rule 60A? This is what I don't understand. Why do we need Rule 60A? If what they were doing is keeping the same judgment but writing an opinion, is anything in Rule 60 pertain to a judge who wakes up one morning and says, you know, I never explained that part of my judgment. I think I'll do it. Again, if he was explaining the judgment based upon what the record was at the time, that's what Rule 60A tells us. But why do you need Rule 60A, I'm asking. I'm not even sure that's what Rule 60A says, because Rule 60A seems more to deal with correcting a judgment. All the other cases, they did change the judgment. Here there was no change in the judgment. I guess we differ on change. A change is adding something to the judgment, even if it's just an explanation or a rationale or something to do with it. But ordinarily a judgment doesn't have an explanation. It's just this is what you have to do. And in all the other cases, as far as I could tell, that's what happened. He said, oops, I said he had to pay X. He really has to pay Y. That's not what I meant. But that didn't even happen here. He didn't change what you had to pay. No, he didn't. Leaving aside this issue of set-off, didn't change the number in the judgment. So he didn't amend the judgment or correct the judgment or anything else. He just explained it. It changed the judgment. You can't change a judgment to add new evidence except under Rule 60B-1, the new evidence rule, to change it. But he didn't change it. Well, change is adding, in our view. Adding an explanation that didn't exist at the time in order to make it enforceable somewhere else is a change. It's an addition. It's not the same judgment. If he had left the judgment exactly as it was and said, French Court, I'm going to issue an opinion telling you why I did what I did, would he need Rule 68 to do that? I don't know if he'd need Rule 68. He'd already issued an opinion saying he did what he did, and that opinion was rejected by the French Court. But that's completely evading Judge Berzon's question. Is there anything in Rule 68 or anywhere, any statute, any rule, any case that prevents a judge from saying, I'm going to explain it again because for any reason, either I feel like I didn't give an adequate explanation, I have a new law clerk who thought of something better, I want to satisfy the concerns of a foreign court, what would prevent a judge from giving a further, additional, different explanation for the exact same judgment that you cannot any longer challenge? The lawyers should have pointed out the problem. Yeah, well, from the beginning, the lawyers for Sierra should have said, in order to enforce this in France. That's not my question. Is there anything that prevents the judge from writing a new opinion if the judge wants to? The cases in this circuit say the judge cannot add an intention that didn't exist at the time and change the judgment. But that's not the question. That's what I'm trying to find out. I'm assuming, I understand your argument about the setoff. Leaving that aside, he didn't change the judgment, unlike the cases that you're talking about. In all of those cases, as I remember, you can tell me if I'm wrong, the original judgment said do X and the 6GA correction said do Y. Right? That's correct. That is not true here. I understand your argument. Assuming it's not, except for that, it's not true here. They didn't change, correct, or do anything to the judgment. He explained it. Kind of going round and round here. He explained it by adding a new rationale. Okay, fine. But there's no other case like that, is there? There's no case where that was said to even need a Rule 6GA, is there? Well, there's no other case approving it under Rule 6GI either. Or anything, yes, but it has nothing to do really with the 6GA cases. The application was made under Rule 6GA. The judge was purporting the exercise. I thought it was in the alternative 60B6. 60B6 definitely doesn't apply. Why? 60B6, you need some other reason that's not in 60B1, 2, or 3. But these are all relief from judgment. This isn't a relief from the judgment. It's just not a relief from the judgment. Which is why 60B wouldn't apply, because 60B is for relief from judgment, and that's not what they were seeking here. Well, they moved under 60B6, saying that they were looking for a relief from judgment under the any other reason exception in Rule 6, but in fact what they did was rely on new evidence, which is 60B1, 60B2, or a mistake, 60B1. They didn't understand the French procedure, so they needed to add more to the default judgment. That's a mistake. Yeah. Are there any further questions? Thank you. Good morning, and thank you, Your Honors. May it please the Court, I'm David Solomons on behalf of FLE Sierra National Insurance Holdings, which at this point owns both judgments against Mr. Annan, the one originally for Sierra as well as the one for the Commissioner. There are two threshold questions in this appeal, and we believe they're the only ones the Court need reach. The first is whether the District Court had discretion to amend the judgments, in this case to include the additional information that would make the judgments enforceable in France, or to... Did he amend the judgment? In fact, in any sense in which any of the other cases talk about, in terms of what we usually think of as a judgment and what all the cases think of as a judgment, did he amend the judgment? I don't think it's... I think that's one way to consider what he did. In other words, I think that's one way to view it. What he did was he added detail into the judgment that the French courts needed to make it enforceable. There was clearly nothing wrong with the original judgment. There was no legal error in those judgments. But we think within the parameters of Rule 60A, there still was a mistake in the sense that the judge and all the parties assumed these judgments would be enforceable in France. It was always understood... In terms of American Federal Court judgments, when we have a separate writing and you enter a final judgment, this isn't what a judgment looks like, right? Correct. That's correct. What? That's correct. And there's clearly nothing wrong with the original judgment, except that it didn't accomplish one of its intended purposes, which was to allow it to be enforced in France. Does France require that this explanation be within a document called judgment, as opposed to that there be an explanation? I believe that was one of the arguments that was made in the French courts. And to avoid any doubt, that's what the district court did to ensure that it would be enforced. Analytically for us, under our own domestic rules, should we analyze this as a Rule 60 question of the extent of a court's authority to add detail or whatever you want to call it that was done here? Or should we view it as the court's inherent authority to explain itself by saying more than is necessary in a judgment? I mean, a judgment, as Judge Berzon says, can be one page that says, you win, you get 10 point whatever million dollars from Monsieur Aina, and that's it. And then you can attach an opinion explaining it. But should we analyze it as a rule question? Or should we analyze it as an opinion question, which the judge chose to incorporate into the same document? I think either would work and either would permit the court to affirm. Let me do my best to explain why I think it does fit within the Rule 68 parameters and then explain why I think within the inherent power of the court to ensure the enforcement of a judgment with the Supreme Court. Well, how did you get in this fix to begin with? Well, we got in this fix, Your Honor, because we obtained a default judgment that, as I think the court's questions have already indicated, always was exactly what the amended judgments now say, which was individual to a non, and was for the amounts that are in this year, 10.8 million. What happened was, Mr. You didn't know about the requirements of French law. Well, I don't even know that the French courts had these requirements at the time, Your Honor. This is just the way it played out once these judgments were attempted to be enforced in France. Some of this is the result of a number of arguments that were made by Mr. in the French courts to try to block enforcement, making a variety of what we believe were misrepresentations about what the judgment actually did. It caused the French courts to say, without more information in the judgment, explaining the nature of the damages and the conduct of Mr. and the like, that it wouldn't be enforceable. We then came back to the district court, filed a motion under Rule 60A or in the alternative under 60B6, because those were the best examples we could come up with. I do think he had the inherent authority as well. And the judge decided to do it under Rule 60A. Now, the two cases under Rule 60A that I think suggest that's an appropriate way to go are the Robie case from this circuit, where you had a judgment that was sound and valid in its own, but the patent and trademark office concluded that it wasn't specific enough as to the particular trademarks to be able to be implemented by the PTO. And the court said it was inappropriate under Rule 60A to provide additional information about the specific trademarks at issue. The other case that we think also supports his propositions from the second circuit, the Robert Lewis Rosen Associates case versus Webb, which we cite, which involved enforcement of an arbitration award, where you had one court that confirmed the award, but wasn't specific enough about the details of the award, and then another court that attempted to enforce it and concluded that there wasn't enough detail, and so it was held to be appropriate under Rule 60A. But in both of those instances, the detail was with regard to what I've been characterizing as X. What should you do? What are you being ordered to do, right? In the patent case, what patents are supposed to be, or what trademarks are covered here, right? And in the other case, I think, as I understand it, it was similar. I mean, in either instance, should the bottom line, i.e., this is what you have to do, remain exactly the same, which is what happened here. That's right, and we think, again, that the substance of the judgments have not changed one bit, and I'm happy to get into that and explain in detail why the two changes just didn't happen. First of all, my understanding is, with a little bit of elaboration, that the judgment against the commissioner isn't actually being questioned, except in a minor way. But with regard to the Sierra judgment, it is a little mysterious where this number came from, and there is an explanation in the opinion which seems to say two somewhat different things. I mean, one of them is it has something to do with the cost, and your opponent says, well, the cost didn't even exist at the time, so that couldn't have been it. And then he seems to say somewhat alternatively, well, even though he was injured, there was major compensatory damages to do, there was really no way to figure out what they were, so it took a much lower number represented by the amount of profits as a fair number. That was the second explanation. I think that was, in fact, the only explanation, Your Honor. I think as you look at the original default order as to Mr. Anon, it was combined in the order. It also had the math defendants in that same order. And what happened was that Sierra put forward a broad lost profits theory that had a large number that would be the total lost profits that would be joint and several for all of the defendants and that would have been subject to the set-offs from the prior settlements. The court declined to accept that based on the evidence that existed at the time, acting essentially as a jury on the default judgments against the math defendants and Mr. Anon, concluded instead to award specific damages as to each defendant or group of defendants that was tailored to them, that was not joint and several among all the defendants. As for the math defendants, it was joint and several among just the math defendants, which again proves it wasn't joint and several as to Mr. Anon. And it was based on Sierra's out-of-pocket expenses, if you will. As to Mr. Anon, the figure was 10.8, but it was a lost profits figure. It was not based on out-of-pocket expenses. So there's no overlap whatsoever between the type of damages that were being awarded against Mr. Anon and the damages that were being awarded against the math defendants, which is why the district court, when the math defendants, unlike Mr. Anon, who never did, actually moved to try to set off the prior judgments, said, no, these are specific to you and there's no overlap. You're not entitled to set off. So there's no overlap between the damages that were assigned to Mr. Anon and those assigned to the math defendants or any other. And what the court explained in the amended judgments was very clear about this, is that the judgment against Mr. Anon is to compensate Sierra for the losses it suffered as a result of Anon's tortious conduct and not that of any other party. That's 11 to 12 of the excerpts of record. That it was perhaps rough justice. It was a very conservative number, the judge said. He said we have competent evidence to prove a much larger number, but he picked a number and that role is sort of acting as a jury once there's been a default to come up with something that would allow the case to go forward. If anything, we think he picked a number that was too low. We did not appeal it. We would have preferred a larger number that was joint and several. But it was clear that it was always 10.8. It was always specific and unique to Mr. Anon. There was no overlap with any other damages that were awarded against any other defendants. And it was not joint and several. The odd about it is that you can't discourage profits twice. So even though the number was the same and the explanation says, but the judgment against Sierra was not in fact a discouragement of profits, it was kind of a peculiar way to proceed. Perhaps. I think the court did have broad discretion. And I will say again, this wasn't our number. This wasn't something that we thought was the right number at the time, although we did decide not to appeal it. And it's now far too late to complain about the number. And I think even Mr. Anon's counsel today conceded that he has no right to complain about that number. But what the district court did say in the admitted judgment, and he was very clear about this, was that the damages award of 10.8 was not duplicative of the unjust enrichment award to the commissioner, that it was based on a completely different legal theory. It was based on lost profits. And it was to compensate Sierra for the separate loss it suffered as a result of being denied the opportunity to participate in a fair bidding process. And the court did its best to come up with a number, acting again in that role of almost a jury. Counsel, at the beginning you said there were two issues. And the first one is whether the court had authority to amend the judgment. But what other issue is there? I think the only other issue, Your Honor, is whether in the course of amending the judgments, the district court changed them substantively. And I think that's the crux of Mr. Anon's appeal. He points to two substantive changes that he claims occurred, both of which we think are clearly wrong. The first is he claims that it went from being a joint and several judgment to being an individual judgment. And in the course of that, he lost the right to set off. And for all the reasons I've been trying to explain, and they're set out in our brief, it was always an individual judgment. And that means there's never any set off right. If you look at the cases under 877, we cite many of them. The Hock case, for example, makes very clear that under 877, it presupposes the existence of multiple defendants jointly liable for the same damages. And you simply did not have that here. Now, certainly in our complaint, we alleged joint conduct. We also, however, alleged individual liability. We alleged both in the complaint. Mr. Anon misses that. But both are specifically alleged in the complaint. And the court didn't accept our arguments at the time for joint liability, based on a large theory of lost profits, and instead decided to award specific damages to each defendant or group of defendants individually that didn't overlap with one another. Did the judge say, either in the judgment or otherwise, in argument or anywhere, at the time of the original judgment, that that's what he was doing? Well, I do think there are, yes, Your Honor. I think there are clear indications that that's what he was doing. And let me point to a few. First, and I think this is now clear, that there's no way to construe the judgment that the Commissioner received as anything other than individual to Mr. Anon. In fact, you have the order for the Commissioner say that it's for his unjust enrichment. And you have the judgment, which says he's individually liable. That's a quote from that judgment. And then what the court says in the order for Sierra National is that it's going to award the same judgment, which we think is not only the amount but also individually liable, just like it was with the Commissioner. So the judgment did say individually liable at the beginning? Yes, it did. And it did in the, just to be clear, in the Commissioner's judgment. The order then says the same judgment shall be entered against him for Sierra National. And so we think that clearly indicates it. We also think when you read the order of default, there's just no other way to read it. He rejects our theory of broad loss-profit damages that would have been joint in several. He acknowledges that we even conceded it would have been joint in several and would have been subject to the prior set-offs. Instead, he awards individual liability. Now, the MAP defendants, he treats as a group, and he says they're jointly and severally liable for their amount, which he calculates based on out-of-pocket expenses. And he requires, he doesn't set the amount at the time, he requires an affidavit from us to show it so that he can then enter that amount. Wait a minute. So this is, I'm still a bit confused because if the, you say if they were profit, if they would have been the Sierra's loss profits that would have been joint in several. If he had awarded the large number of our total loss profits. I understand that, but what difference does it make if he was using a number that was a substitute for that, which is what he said. Oh, I don't believe that's what he said, Your Honor. I thought that's what you said he said. He doesn't say he's using it as a substitute. Well, a substitute, I guess, is maybe what's throwing me, Your Honor. It's the alternative, in other words. He says I'm not going to give you a large loss profits number that's going to be joint in several. Instead, I'm going to take the two groups of defendants that have defaulted and I'm going to give a specific judgment as to each that's not going to be joint in several and instead is individual. And they're based on different theories of damages. There's no overlap between them. That's the point I'm making, Your Honor. And therefore, as a result. But wasn't the use of the amount of Hennon's personal gain an estimate, essentially, of an ascertainable amount representing the loss profits? The damages awarded to Sierra. Not. Just a minute. I'm sorry. The damages awarded to Sierra would have compensated for the loss suffered as a result of being denied the opportunity to participate in their bidding process. While Sierra offered competent evidence that the losses it suffered exceeded $3 billion, the court determined that only a portion of those losses should be allocated to Hennon and then it chose $10 million. So it is the losses. It is a loss profits award. What it's not is a total loss profits award. I understand that. It is a loss profits award that's attributable only to Mr. Hennon and his conduct. And as a result, it is individual. It is not joint in several. And that's the point. The court determined that only a portion of those losses should be allocated to Hennon. Correct. And he also says, and this is in 11 and 12, Your Honor, he says that the judgment against Hennon is to compensate Sierra for the losses it suffered as a result of Hennon's tortious conduct and not that of any other party. So it's clearly individual as to Mr. Hennon. Now the only other ground he claims creates a change that allows him to open up substantive attacks to the judgments is that the amended judgments or the opinion explaining the original judgments, if you prefer, provides specific facts, whereas the original judgments did not. First of all, that doesn't change the judgment itself by providing the explanation. But second, he seems to presume that there was no facts found in the default judgment. And that's wrong as a matter of law. As the district court itself noted in the amended judgment, it's settled law that as a result of a default, all of the operative facts alleged in the complaint are deemed to be found. So all of the facts were found before, they just weren't specified because that's not what you normally do with a default judgment. That led to the enforcement problems in France. So the judge specified them, but he made very clear that he was only relying on facts that existed at the time that were based in the record and that supported the original judgment. He wasn't adding any additional facts. Well, there were a couple of random things that were mentioned. One of them was the Alford plea, but there was some other. I can no longer remember what the other was. What difference does that make to our analysis? None whatsoever, Your Honor. And I think if you look at page 8 of the excerpts of record, this is, I think, where it happens. And what the court makes clear, he's already sort of explained the judgment. At this point, he's addressing the French courts, and he says the court provides. In the footnote, right? He says, this court provides this additional information to the courts of France for their consideration should Anon attempt to repeat his claim that as he had chosen to defend himself at trial, he would have prevailed. So you're saying it's merely a sort of separate advisory, and it's not a basis for the judgments. It has nothing to do with the judgments themselves. What the court was, I think, offended by and responding to was the fact that representations were made in the courts in France that were simply not true, having to do with the evidence that was in the case, having to do with Mr. Anon's role, even the nature of the damages that were awarded and the like. And he's pointed out, look, you know, FYI, court of France, here are some problems with what you've been told, but that has nothing to do with the judgments themselves. And I'm happy to end. Thank you, Your Honor. That didn't leave you very much time. I hope you want to take the time I'm using to set up here, Your Honor. Let me tell you, if I may, Your Honor, my error there was only that the court's order seemed to set his time separate and not from my time. And so I did not understand the court's order as having his time come out of my 20 minutes. Because of the way it was worded. And so I apologize. It says here, amicus, insurance commissioner, five minutes, maximum argument time, 20 minutes. It's ambiguous. We'll have to explain it in an amended order. But that was just the original one. We usually admit it the other way, and I think we're all agreeing. According to me, it says maximum time, 20 minutes aside. But it's all right. Having been in that position myself when I was a lawyer, I could see the squirming, and I thought I would take him out of his misery. We're flexible.  May it please the Court. My name is Charles Rice, and I represent the California Insurance Commissioner. And the insurance commissioner represents the 300,000 former policyholders of ELIC that were defrauded by Mr. Hanan and his co-conspirators more than 20 years ago. I'm going to focus on one particular issue, which is whether Mr. Hanan is entitled to a release or a set-off of his liability to the commissioner, the commissioner's judgment, for his unjust enrichment. Hanan claims that he is entitled to a release because the commissioner settled his judgment against the mock defendants for their unjust enrichment. In the commissioner's case, we're talking about only unjust enrichment, not damages. So there's no dispute at all that we're dealing with several liability, not joint and several liability. To put it simply, what Mr. Hanan is claiming is that he should get to keep his ill-gotten gains because the commissioner received some of the ill-gotten gains received by the mock defendants. That's just wrong, both as a matter of common sense and as a matter of law. In the first place, Hanan waived his release argument. He never raised this defense at any time in the district court, and he's not entitled to raise it for the first time on appeal. But even if it had not been waived, Hanan's demand for a release has no merit for all of the reasons stated by Sierra in their opposition brief. In addition, Hanan is not entitled to a release because the district court held that Section 877 applied to the mock settlement six years ago, and neither Hanan nor any other party opposed or appealed that ruling. Section 877 expressly provides that a release of one defendant does not release any other defendants, so Hanan was not released by the mock settlement, especially since that settlement expressly excluded Hanan. What Hanan now argues for the first time on appeal is that Section 877 doesn't apply to the mock settlement because that settlement was executed after the mock judgment. He relies on the language in Section 877 that states that it applies to settlements, quote, before verdict or judgment, end quote. But that phrase refers only to a verdict or judgment of joint tort fees or liability. As shown by our amicus brief, that's the only interpretation of that phrase that is consistent with the California statutory framework, the case law, and the legislative purpose. But then what you're saying is circular, because then it doesn't matter that the district court found that 877 applies because you're saying it just doesn't, it's just not relevant. I don't believe so, Your Honor. What I'm trying to say is that if none of the arguments that have been made by Sierra are accepted, and there's several of them, and I think each of them is sufficient to require affirmance here. Right. That if you get past all of those arguments, you do reach the question of whether 877 applies. But you just said that it doesn't apply because it simply doesn't apply to individual judgments. That the prejudgment language, I understand you'd be saying that 877 is just not relevant when you have individual judgments. That's not what I'm saying. I'm sorry. What are you saying? I'm saying that there was a finding here that this settlement, the mock settlement, was in good faith under Section 877. So the district court applied 877 to that settlement. And that finding is binding on Mr. Hanan. But then you were trying to explain the language in 877 that talks about before verdict or judgment. Right. And you said that that doesn't apply to individual judgments. No, I'm sorry. I've confused, Your Honor. What I'm saying is that Section 877 does apply because the settlement here was before any judgment or verdict of joint tort fees or liability. There was a judgment of individual liability. But that doesn't keep 877 from applying here. This settlement wasn't before a verdict or judgment of joint tort fees or liability. It was only before a judgment of several liability. So Section 877 applies just like the district court found. But I thought there never was a judgment of joint liability. There wasn't a judgment of joint. Right. That's what I'm saying. So it happened before something that never happened. I'm sorry, Your Honor. What I'm saying is that there wasn't a judgment of what Hanan is saying is this Section 877 doesn't apply because the settlement occurred after a judgment. And what I'm saying is that's not right because it only occurred after a judgment of several liability. It didn't occur after a judgment of joint and tort fees or liability. So if there had been a judgment of joint tort fees or liability, which there wasn't, then Section 877 wouldn't apply. But here there was a judgment of only several liability. And so Section 877 does apply. I'm totally confused, but that's okay. Okay. Well, I'll try. I could try again, but I think if you go back to look at the brief. The point here is that the point is don't read your insurance policy. Well, you know, the commissioner would hate to say that. We actually think it's pretty important what the policies say. It seems to me that you're still saying in essence the statute doesn't apply because there's individual liability. Because you're saying it's before a joint and several liability judgment, but then you're saying there never was a joint and several liability judgment. I'm sorry, Your Honor, because I am confusing you. What I'm saying is the statute applies here because there was never a judgment of joint and several tort fees or liability. That's the situation we have here, and that's why Section 877 applies. There was a judgment, but it was a judgment of several liability. And that sort of judgment does not result in 877 not applying. That's what I'm trying to say. It's a double negative. It is a little bit of a double negative. And again, if it applies, there's no release. There's no question about that. And there's no release for lots of other reasons. In fact, if you look at the reply brief that Hanan filed, he doesn't respond to these arguments at all. He seems to be conceding our interpretation of the statute. One final point, which is Hanan does say that if he's not entitled to a release, then he has to be entitled to a set-off. But that's not the case. First, as far as the commissioner's judgment goes, he never claimed a right to a set-off in the district court. He only claimed a right to set-off for the Sierra judgment. So that argument has been waived. But secondly, there's a long line of cases which are cited by Sierra's brief at page 29 through 30 that held that a defendant is not entitled to an offset for a defendant's settlement of several liability. Those are the cases that were applying Section 1431-2, where California law provides several liability only for non-economic damages. And what the courts have held is when there's a settlement of that kind of several liability, 877 applies, but you're not entitled to a set-off. Again, those cases were cited in Sierra's brief. Hanan's reply doesn't respond to them at all. So in the end, we come down to the simple proposition that Hanan doesn't get to keep his ill-gotten gains just because the MOF defendants kept their ill-gotten gains. If you have a bank robbery with two robbers, and one of them keeps $50,000 worth of the jewels, and the other keeps the other $50,000 worth of the jewels, the store goes after both of them and recovers the $50,000 that was kept by one defendant. The second defendant can't say, Aha, you've already gotten recovery from that defendant, so I get to keep my $50,000. That's what Hanan is claiming here, and that's just unjust. May I just ask you just a general question? Now, our American insurance companies that are chartered in the United States, corporate in the United States, they can be sold to a British company. There are some laws about whether or not they can be sold to a British company. If the British company was controlled by the British government, there would be restrictions. The reason I ask you about this, have you ever heard of equity funding case? I've heard of it, but I don't know the details of it. You ought to read about it because that was one of my huge successes as a district judge. But that company was saved through a Chapter 11 at the time, and it went on and it did well. It earned something like 14% per annum. Then it was purchased by a British corporation. I wasn't involved in any of that. But now you have a company that's purchased by French people, but somehow the government is controlling that group. There's this conspiracy. Now, so what is the problem if a foreign government controls an insurance company? Well, there was a statute at the time, California Insurance Code Section 699.5, that expressly prohibited a foreign government from controlling an insurance company. We still have that statute. I think we have a version of it, but I'm not really sure. This all happened 20 years ago. 20 years ago, it was yesterday. I agree, Your Honor. But all I'm saying is I'm not in a position to tell you exactly what the law is today. This case involves what the law was 20 years ago, and at that time there's no question that there was a law that restricted the ability of any entity controlled by a foreign government from taking over an insurance company. Well, I can understand why we'd have that rule. Right, and the defendants lied about it. That's what the conspiracy was, and that's why we've sued them for fraud. All right. Thank you very much. I know I have very little time. I'd like to address just one issue, and that's Section 877. I think there's a fundamental misunderstanding about Section 877. Whether one is entitled to an 877 credit does not depend upon what the final judgment is or isn't. It depends upon what the claims alleged are as of the time of the settlement. And the cases make that clear, and Vesey makes that clear over and over. Even if, ultimately, the name... The district court ruled otherwise a long time ago. The district court... It doesn't matter what the district court ruled with respect to ultimate liability. It matters what 877 allows. No, but I... It is true, is it not, that at the time of the math judgment, the district court specifically addressed this rule in a way inconsistent with what you're saying? No. Exactly to the contrary. At the time of the math judgment, at the time of all six times the court considered this, every single time the court ruled on 877, it said 877 applied because there was an allegation of joint liability as of the time of the settlement. That's all it takes for 877 to apply. It doesn't matter if the district court ultimately found Mr. Anah was separately liable. In fact, the Vesey case says the fact that the non-settling defendant is ultimately held liable, where the settling defendant... Why does this matter at all if it's not joint liability? You're saying just because the complaint said joint liability, even though no joint liability ever came out of this, you say we're supposed to close our eyes to that? We're saying that Vesey requires you to look at the claims at the time of 877, not the judgment that's later rendered, and specifically says even if only one of the offenses is held liable at the end of the day, which is what happened here, Mr. Anah was held liable for this, if at the time of the 877 settlement there was a joint liability allegation, there is an entitlement to a credit, end of discussion. That's what Vesey says. That's what McComber says. That's what Lafayette says. But hasn't there been a requirement of a credit for something that is apples and oranges? The cases say the purpose of 877 is to balance, to encourage settlements at a time when there's claims of joint liability. Why isn't this an argument against the original default judgment, which is way too late to make? Because it wasn't in the original default judgment. The first time the court said that there's no right to set up was in the revised default judgment. Okay, that goes way back. Okay, so if we disagree with you on that, you're done on this argument, too. If we think that the original judgment was exactly like the amended, except for explaining itself, then this argument can't work. Well, it wouldn't work with respect to the four 877 rulings before the original default judgment. It still applies to the 877 ruling after the original default judgment, where the court again, again found that 877 applied. You know, we understand your argument. Okay. Well, just a minute. After the default judgments, it couldn't matter what was in the complaint. The case was over. The only way that the Moff defendants could apply and Sierra could apply under Section 877 was to continue to claim that there were allegations of joint liability in the complaint. That's what they got. As to Hannon, whom they already settled with? Who already had a judgment against him? A final judgment against him? Because 877 relies upon what's in the complaint, not what's the final judgment. And they went back to the court and said, that's what's in the complaint. I think we understand your position. Thank you. All right, thank you. We're going to take a short break. Where's the commissioner? Go read my case. Equity Funding, Your Honor. Yeah, it's in Fed Sub. Thank you, Your Honor. That would probably be the most rewarding thing you ever read in your life. That's a point of recess until 11 a.m. Thank you.
judges: Pregerson, Graber, Berzon